# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

```
┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄x
In re:                            :    Chapter 11
                                  :
FNR Properties, LLC, and          :    Case No. 18-10113, 18-10114
FHH Properties, LLC,              :
          Debtors.                :
                                  :
┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄┄x
```

### CHAPTER 11 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE SALE OF THE DEBTORS' PROPERTY, (II) APPROVING SETTLEMENT WITH CERTAIN THIRD PARTIES AND (III) GRANTING RELATED RELIEF

R. Patrick Sharp, III, Chapter 11 trustee ("***Trustee***"), hereby moves pursuant to sections 105, 363, 365, 503 and 507 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rules 2002, 6003, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") for Entry of an Order (i) Approving the Sale of the Debtors' Property, (ii) Approving Settlement with Certain Third Parties and (iii) Granting Related Relief (the "***Motion***"). In support of this Motion, the Trustee respectfully represent as follows:

## I. INTRODUCTION

1. This Motion is the culmination of significant negotiations between the Trustee, various creditor constituencies, significant contract counter-parties, and the proposed purchaser. The Trustee was appointed by the Court to manage these assets in response to a total abandonment by the Debtors' management and now seeks authority to sell the assets on the following terms:

{00363333-2}

- The Trustee requests authority to sell substantially all of the Debtors' assets to Hamdan Sons Investments, Inc. ("**Purchaser**") for $4.3 million subject to a mutually agreeable asset purchase agreement and related diligence items. To facilitate the settlements described herein, the Trustee proposes the sale take place as soon as possible and without an auction and bid procedures.

- The Trustee also requests authority in connection with the sale to settle a dispute brought by Infinity Fuels, Inc. ("**Infinity**") related to asserted rights of first refusal and branding covenants associated with FNR's assets. Under the proposed settlement, Infinity will release its right of first refusal and branding covenants and resolve any and all claims it may have against the estates in exchange for $100,000 at closing of the sale of FNR's assets as long as such closing is completed by July 23, 2018.

- The proposed Sale will also resolve objections filed by Shell Oil Company with respect to certain exclusive branding covenants associated with the FNR assets.

- The Trustee further seeks approval of a settlement with Hancock Whitney Bank related to the FNR assets in which Hancock Whitney will reduce the payoff of its secured claim by $30,000.00 if and only if the closing of the Sale with the Purchaser occurs by July 23, 2018 to free up additional consideration for the estate.

- The Trustee asks the Court set this Motion for hearing on July 18, 2018, at 10:00 AM.

- The Trustee asks the Court to ultimately enter a Sale Order substantially in the form attached hereto as Exhibit A.

2.      The Trustee asserts that the relief requested herein is supported by his business judgment and in the best interest of the estates. The sale price finds support in third party appraisals. Moreover, the Trustee has conducted significant efforts to identify potential other bidders or interested parties in the assets and concluded that the Purchaser's offer is likely the only viable sale proposal. The Trustee submits the proposed sale will provide substantial value for the estates under circumstances that could have resulted in little to no recovery for creditors.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (M), (N) and (O). Venue of this case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 363(f), 365, 503 and 507, and Bankruptcy Rules 2002(a)(2), 6003, 6004, 6006(a), 9007 and 9014.

### III. BACKGROUND

**A. General Background**

5. On January 18, 2018 (the "*Petition Date*"), Fatmah Hamdan ("*Ms. Hamdan*"), FHH Properties LLC ("*FHH*") and FNR Properties LLC ("*FNR*") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. B Xpress Elysian Fields LLC ("*B Xpress*") originally filed a Chapter 7 proceeding and thereafter converted the case to Chapter 11.

6. FHH and FNR are single asset real estate companies owning convenience store properties. FHH owns a convenience store on property located a 3101 Elysian Fields Avenue, New Orleans, Louisiana ("*3101 Elysian*"). FNR owns a convenience store on property located at 3032 Elysian Fields Avenue, New Orleans, Louisiana ("*3032 Elysian*"). Infinity sold 3032 Elysian to FNR pursuant to an April 4, 2011 Branding Product Purchase Commitment Agreement (the "*Infinity Agreement*") and asserts it maintains a right of first refusal and fuel purchase covenant associated with that sale. Similarly, Infinity's predecessor with respect to 3032 Elysian, Motiva Enterprises, LLC, and its successors or assignees, including Shell Oil Co. ("*Shell*") assert a brand covenant and right of first refusal associated with a January 24, 2008 Act of Sale (the "*Shell Agreement*").

7. On April 13, 2018, Ms. Hamdan, FHH, FNR, and B Express filed motions to convert each case to Chapter 7. The Court converted both Ms. Hamdan and B Express' cases to Chapter 7 on April 18, 2018. Ms Hamdan notified the Court and creditors in connection with these motions and related hearings that she was unable to continue operating the Debtors' convenience store properties. On April 20, 2018, the Court entered orders asking the US Trustee

{00363333-2} 3

to appoint a Chapter 11 trustee in the FHH and FNR cases, resulting in the US Trustee appointing R. Patrick Sharp, III, as Chapter 11 trustee in both cases the same day.

**B.     The Sale Process**

8.     On April 23, 2018, the Trustee filed an emergency motion seeking authority to lease 3101 Elysian and 3032 Elysian to affiliates of Brother's Food Mart, Elysian Fields Operations No. 1, LLC and Elysian Fields Operations No. 2, LLC (collectively "*Lessees*"). The motion further sought approval of a term sheet related to sale procedures and approval of Hamdan Son Investments, LLC ("*Purchaser*") as a stalking horse bidder at a purchase price of $4,000,000.00 subject to due diligence and a definitive purchase and sale agreement. The Court granted the emergency motion on April 24, 2018, on an interim basis, authorizing the Lessees to take possession and begin operating 3101 Elysian and 3032 Elysian in exchange for rental payments to the Trustee.

9.     On May 7, 2018, the Trustee filed a motion seeking approval of Purchaser as stalking horse bidder and approving certain bid and auction procedures ("*Trustee Auction Motion*"), which was set for hearing on May 30, 2018. The Trustee Auction Motion received an objection from Shell, which the Trustee resolved through an agreed reservation of Shell's brand covenant agreement and agreed waiver of Shell's right of first refusal in connection with the sale of the FNR assets to Purchaser. The Trustee Auction Motion also drew an objection from Hancock Whitney Bank regarding the sale proceed allocation and to confirm its secured claim would be paid through the sale process.

10.    While the Trustee Auction Motion was pending, the Trustee contacted numerous potential purchasers in the market, determined that Purchaser, under the exceptional circumstances, was likely the only party that could complete a sale transaction of all Debtors'

assets, and decided that the proposed sale to Purchaser would provide the best value to the estates.

11. On May 29, 2018, Infinity Fuels filed an objection to the Trustee Auction Motion related to the right of first refusal and fuel purchase agreement contained in the Infinity Agreement. (*See* Case No. 18-10114, Doc. No. 164). Infinity later filed a supplemental objection requesting the proposed *in globo* sale of FNR and FHH's assets be split or broken up into two auctions of each individual convenience store property. Additionally, Infinity demanded that it be allowed a 60-day period after the auction to exercise a right of first refusal. (*See* Case No. 18-10114, Doc. No. 179). Infinity's position requested a sale process unacceptable to the Trustee and the Purchaser and that would likely have chilled bidding on the FNR assets and may have resulted in a loss of any potential bidders. The Parties requested a briefing deadline and hearing to litigate Infinity's rights while entering settlement discussions to resolve the objections.

12. On June 11, 2018, the Trustee filed a motion to allocate sale proceeds based on an appraisals conducted by a Court-approved third party (MAI) appraiser. (*See* Case No. 18-10113, Doc. No. 168; Case No. 18-10114, Doc. No. 183). The third party appraisal estimated value of 3101 Elysian at $3,375,000, and 3032 Elysian at $1,300,000. Notably, the appraisals did not account for any environmental issues, occupational license issues, or zoning and permitting issues at either property.

13. The Trustee now files this Motion seeking approval of a Sale to Purchaser. This Motion further requests approval of resolutions with various parties-in-interest to facilitate the sale. The key components of this resolution include:

a) Sale to Purchaser at $4,300,000.00, an increase from Purchaser's stalking horse bid, which the Trustee submits is supported by the third party appraisals after factoring in certain environmental, zoning, and permitting issues and other items that could not reasonably be subject to the appraiser's estimate.

b) Settlement of Infinity's objections and contractual disputes pursuant to Bankruptcy Rule 9019 with $100,000.00 cash payment payable at closing of the 3032 Elysian sale on or before July 23, 2018.

c) Reduction of the Hancock Whitney Bank secured loan payoff by $30,000.00 if and only if the closing of the Sale with the Purchaser occurs by July 23, 2018 with the remaining amount payable at closing of the 3032 Elysian Sale .

d) Reservation of Shell's covenants and waiver of Shell's rights of first refusal for this specific Sale.

### IV. RELIEF REQUESTED

14. By this Motion, the Trustee seeks entry of an order authorizing the sale to Purchaser subject to the original Term Sheet, as modified. The Trustee also intends to enter a binding *Purchase and Sale Agreement* (the "**PSA**") between the Debtors and the Purchaser, which shall be submitted to the Court on or before June 22, 2018. The Trustee asks the Court to set a hearing to approve the sale to Purchaser (the "***Sale Hearing***") on July 18, 2018, in order to allow a closing in accordance with the settlement reached with Infinity.

15. In addition, the Trustee seeks, at the conclusion of the Sale Hearing, entry of an order substantially similar to the Order attached hereto as Exhibit A (a) authorizing the sale of substantially all of the Debtors' assets to an affiliate of regional convenience store owner and operator, Brother's Food Mart, specifically, HSI, or its designee (the "***Purchaser***"), and (b) granting certain related relief (the "***Sale Order***") as more fully set forth hereinbelow and in the Sale Order. The Trustee also seeks approval of the various settlements set forth herein pursuant to Federal Rule of Bankruptcy Procedure 9019.

16. The broad terms governing the sale between the Trustee and Purchaser and are summarized as follows:

{00363333-2} 6

- Property to be Sold: FHH shall sell the convenience store site located at 3101 Elysian Fields Ave. and FNR shall sell the convenience store located at 3032 Elysian Fields, Ave., in New Orleans, Louisiana, together with the immovable property, improvements, fixtures and related assets being more particularly described in the PSA (the "*Sale*"), (such assets collectively referred to herein as the "*Acquired Property*").

- Purchase Price: The consideration to be paid by the Purchaser for the Acquired Property shall be in the manner and the amount set forth in the PSA, as applicable. The Proposed Purchaser's bid, subject to certain continued diligence items, for the Acquired Property shall be $4,300,000.00, exclusive of any assumed liabilities and other obligations to be performed or assumed by the Proposed Purchaser.

- Allocation of Purchase Price: The PSA shall allocate the funds paid for the Acquired Property at sale between the assets of FHH and FNR on an allocation set forth in the Trustee's Motion for Order Allocating Purchase Price. Based on the proposed purchase price of $4,300,000.00, the allocation would be $3,104,278 for 3101 Elysian and $1,195.772 for 3032 Elysian.

- Free of Any and All Claims and Interests: All of the Debtors' right, title, and interest in and to the Acquired Property, or any portion thereof to be acquired, will be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "*Claims and Interests*"), such Claims and Interests to attach to the net proceeds of the sale of such Purchased Assets, except, with respect to the Purchaser, to the extent otherwise set forth in the PSA.

- Sale Hearing: The sale will be subject to approval by the Bankruptcy Court. The hearing to approve the sale to Purchaser (the "*Sale Hearing*") shall take place no later than July 18, 2018. At such time, the Trustee will seek the entry of the Sale Order by the Bankruptcy Court approving and authorizing the Sale to the Purchaser on the terms and conditions set forth in the PSA.

- Break-up Fee / Expense Reimbursement: While the current sale process does not contemplate an auction, the Trustee proposes reserving the proposed break-up fee of $100,000 and expense reimbursement of up to $150,000 to Purchaser in the event, for any reason, the Trustee pursues or

{00363333-2}  7

...

Court orders a sale transaction other than the proposed transaction with Purchaser.[1]

## V. ARGUMENTS AND AUTHORITIES

**A. The Sale of the Acquired Property Is Authorized Under Bankruptcy Code Section 363(b).**

17. At the conclusion of the Sale Hearing, the Trustee requests that the Court approve the sale of the Acquired Property to the Purchaser and enter the Sale Order. The Trustee submits that the sale of the Acquired Property to the Purchaser pursuant to the PSA is in the best interest of the Debtors' estates and their creditors.

18. Bankruptcy Code section 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use, sale or lease of property outside the ordinary course of business, this Court need only determine that the debtor's decision is supported by "some articulated business justification," as established by the Second Circuit in *Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983), which decision has been adopted in this circuit. *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, at 1226 (5th Cir. 1986); *see also In re Asarco*, 650 F.3d at 601; *In re Cowin*, No. 13-30984, 2014 WL 1168714, at * (Bankr. S.D. Tex. March 21, 2014); *In re St. Marie Clinic PA*, No. 10-70802, 2013 WL 5221055, at *9 (Bankr. S.D. Tex. Sept. 17, 2013); *In re Particle Drilling Techs., Inc.*, No. 09-33744, 2009 WL 2382030, at *2 (Bankr. S.D. Tex. July 29, 2009); *In re San Jacinto Glass Industries, Inc.*, 93 B.R. 934, 944 (Bankr. S.D. Tex. 1988).

---

[1] The Trustee incorporates his arguments and authorities regarding the break-up fee and expense reimbursement from the Trustee Auction Motion and notes parties-in-interest have had the opportunity to review and object to

19. The business judgment rule shields a debtor's management (or a trustee) from judicial "second-guessing." *In re Genco Shipping & Trading, Ltd.*, 509 B.R. 455, 463 (Bankr. S.D.N.Y. 2014); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions"). Once a debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)); *see also In re Filene's Basement*, LLC, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. April 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate; the burden of rebutting that presumption falls to parties opposing the transaction.").

20. Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1). When applying the business judgment standard, courts show great deference to a debtor's business decisions. *See In re Asarco*, 441 B.R. 813, 828 (describing the business judgment standard as "deferential"); *In re Trans World Airlines*, 2001 Bankr. LEXIS 267 at *45-50 (Bankr. D. Del. 2001) (describing business judgment rule as a "very deferential standard"); *In re First Wellington Canyon Assocs.*, 1989 U.S. Dist. LEXIS 10687 at *8-9 (N.D. Ill. 1989) ("Under this test, the debtor's business judgment . . . must be accorded deference unless shown that the bankrupt's decision was taken in bad faith or in gross abuse of the bankrupt's retained discretion.").

---

these protections. The Trustee resolved the one objection raised related to these protections and therefore does not

{00363333-2}          9

21. Here, the fairness and reasonableness of the consideration to be paid for the Acquired Property by the Purchaser is supported by Court-approved third party (MAI) appraisals and various additional marketing efforts made by the Trustee during the course of these Bankruptcy Cases. Furthermore, the Purchaser increased its offer to promote settlement despite the fact that no other offers were received by the Trustee and it has not fully accounted for certain environmental issues revealed during diligence. The Trustee submits this offer—coupled with the resolution of the Infinity and Shell objections, which risked litigation costs and a chilled bidding process—provide the best value to the estates. The Trustee believes that the expense and delays resulting from litigation of complex legal questions regarding the ability to sell these assets free and clear of branding covenants and rights of first refusal would significantly reduce future distributions to creditors. Moreover, the Trustee further negotiated with secured creditor Hancock Whitney Bank to improve the sale outcome for unsecured creditors. The Trustee submits the sale to Purchaser will provide the best outcome for the estates and creditors.

**B.     The Sale of the Acquired Property Free and Clear of Liens, Claims, and Interests Is Authorized Under Bankruptcy Code Section 363(f).**

22. The Trustee respectfully submits that it is appropriate to sell the Acquired Property free and clear of all liens, claims, encumbrances and other interests, in and to the Acquired Property pursuant to Bankruptcy Code sections 363(f), with all such liens, claims, encumbrances and interests attaching to the net sale proceeds of the Acquired Property with the same priority, extent and validity (and subject to the same defenses) as existed with respect to the Acquired Property immediately prior to the sale thereof in accordance with the Sale Order. Bankruptcy Code section 363(f) authorizes a debtor to sell assets free and clear of liens, claims, interests and encumbrances if:

---

repeat that argument and authorities in the present Motion.

{00363333-2}                                                    10

- applicable nonbankruptcy law permits sale of such property free and clear of such interests;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the value of all liens on such property;

- such interest is in bona fide dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). This provision is supplemented by Bankruptcy Code section 105(a), which provides that "[t]he Court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

23. Because Bankruptcy Code section 363(f) is drafted in the disjunctive, satisfaction of any one of its five requirements will suffice to permit the sale of the Acquired Property free and clear of the interests. *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 WL 4554276, at *3 (Bankr. E.D. Tex. Dec. 19, 2007) ("The language of § 363(f) is in the disjunctive such that a sale free and clear of an interest can be approved if any one of the aforementioned conditions contained in § 363(f) are satisfied."); *see also In re Dundee Equity Corp.*, 1992 Bankr. LEXIS 436, *12 (Bankr. S.D.N.Y. 1992) ("Section 363(f) is in the disjunctive, such that the sale free of interest concerned may occur if any one of the conditions of § 363(f) have been met."); *In re Wolverine Radio Co.*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (stating that Bankruptcy Code section 363(f) is written in the disjunctive; holding that the court may approve the sale 'free and clear' provided at least one of the subsections of section 363(f) is met).

24. Here, the Trustee believes that one or more of the tests under section 363(f) will be satisfied with respect to the transfer of the Acquired Property pursuant to a Sale Order. In particular, the Trustee believes that section 363(f)(2) will be satisfied. Moreover, based on the

Trustee's diligence regarding secured claims, the Trustee anticipates the sale proceeds will be sufficient to pay the secured claims of Celtic Bank and Hancock Whitney Bank at closing, and requests authority to do so at closing.

C. **A Prevailing Bidder Should Be Entitled to the Protections of Bankruptcy Code Section 363(m).**

25. Pursuant to Bankruptcy Code section 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims. *O'Dwyer v. O'Dwyer (In re O'Dwyer)*, 611 Fed. App'x 195, 200 (5th Cir. 2015); *In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, *2 (Bankr. D. N.J. May 11, 2007); *Abbotts Dairies of Penn.*, 788 F.2d at 147.

26. Here, the PSA has been negotiated at arm's length by sophisticated parties, each represented by their own counsel, and following significant due diligence. Accordingly, the Trustee requests that the Sale Order include a provision that the Purchaser for the Acquired Property, is a "good faith" purchaser within the meaning of Bankruptcy Code section 363(m). The Trustee believes that providing the Purchaser with such protection will ensure that the maximum price will be received by the estates for the Assets and closing of the same will occur promptly.

D. **The Court Should Approve the Settlements Related to the Sale Process Pursuant to Federal Rule of Bankruptcy Procedure 9019.**

27. Bankruptcy Rule 9019 authorizes parties to settle various claims between them. A Rule 9019 motion should be approved if the proposed settlement is "fair and equitable and in the best interest of the estate." *In re Cajun Elec. Power Co-op.*, 119 F.3d 349, 355 (5th Cir. 1997). The court considering the settlement should consider: (1) The probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) The complexity and

likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) All other factors bearing on the wisdom of the compromise." *Id*. at 356.

28. The settlements proposed by the Trustee resolve potential claims and contracts affecting the sale process and will streamline the resolution substantially while providing value to the estates. The settlement with Infinity avoids litigation over whether the right of first refusal and fuel purchase agreement run with the land, an issue that is hotly contested in bankruptcy law in recent years with appellate courts continuing to weigh in. The Parties anticipate this litigation would be contentious, expensive, potentially give rise to appeals, and result in a delay or chilling of the sale process. The settlement with Infinity and reservation of rights afforded Shell resolves these critical sale issues, clarifies contractual rights associated with the sale to Purchaser, and avoids contentious litigation. Similarly, the negotiated resolution of the Hancock Whitney Bank secured loan payoff frees assets for creditors of the estates while also providing Hancock Whitney Bank assurances of a quick closing.

29. The Trustee submits these resolutions resolve significant clouds on the sale process and provide an optimal sale outcome, particularly under the chaotic and emergency circumstances in which the Trustee began his service in this case.

## VI. NOTICE

30. Notice of this Motion has been given to (i) the United States Trustee for the Eastern District of Louisiana; (ii) the Internal Revenue Service; (iii) all other applicable state and federal taxing authorities having jurisdiction over the Acquired Property; (iv) the United States Department of Justice; (v) counsel for Shell and Infinity; (vi) all other parties known to the Trustee who have asserted or may assert liens, claims or interests (including, but not limited to, rights of first refusal, preferential rights of purchase, rights of consent, or charges or interests of any kind or nature that impose any restriction on the use, voting, transfer, receipt of income or

other exercise of any attributes of ownership) in or against any of the Acquired Property; (vii) the Debtors' secured and unsecured creditors; (viii) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; and (ix) all other entities known to have expressed an interest in a transaction with respect to all or part of the Acquired Property. The Trustee submit that no further notice is required.

## VII. CONCLUSION

Wherefore, the Trustee respectfully requests that the Court (i) issue the Sale Order, substantially in the form attached hereto as **Exhibit A**, and (ii) grant such other and further relief as the Court deems just and proper.

Dated: June 18, 2018

Respectfully submitted,

 /s/ Tristan E. Manthey
Tristan E. Manthey (LA #24539)
Cherie D. Nobles (LA #30476)
**Heller, Draper, Patrick, Horn & Manthey, L.L.C.**
650 Poydras Street, Suite 2500
New Orleans, Louisiana 70130
Telephone: 504.299.3300
Facsimile: 504.299.3399
Email: tmanthey@hellerdraper.com
Email: cnobles@hellerdraper.com
**Counsel for R. Patrick Sharp,
Chapter 11 Trustee**

{00363333-2}  14